Good morning. I am Rita Barker representing the petitioner Herman Sanchez, a petitioner and appellant. This case concerns charges and a conviction for battery on a correctional officer that arose out of a minor riot of sorts on an exercise yard at High Desert State Prison. One officer who was assaulted, Officer Douglas Teach, identified my client, appellant petitioner Herman Sanchez, as one of the men who assaulted him. The evidence at the preliminary hearing showed that I identified appellant as one of his attackers. Interestingly enough in this case, there are two other correctional officers, Officer Kirkland and Officer Cox, who presented evidence that appellant was not one of the persons who assaulted Officer Teach. There was some other evidence having to do with Officer Teach's ability to perceive what had happened or to remember what had happened that also ended up being favorable evidence for my client. For instance, a couple of the inmates that day after Officer Teach took two inmates that piled on and were beating Officer Teach in the head, he had injuries. He himself testified that he was not himself. He did not characterize it as being dazed or confused, but he said, I was not myself. And he went to the hospital. He did not have serious injuries. He had a bump on his head and some cuts and scrapes on his head. And he came back to work four days later, I believe. Four days later was when he filed his report. But before he identified the person who had first struck him as my client, inmate Herman Sanchez, he consulted a diagram that had been prepared by another officer, which showed at trial that diagram was incorrect. The officer, Officer Amring, who prepared it testified, yes, she was forced at trial to admit that she had written the outlines of six inmates at the end after everything was over with that were prone on the ground. She identified my client, Mr. Sanchez, as being in position number five. There also was a videotape taken by another officer where each of those six inmates that were prone on the ground raised their head and looked into the in fact in position number six, not in position number five. The reason this is important is because when Officer Teach came back after his four days off and began to prepare his report, he had previously been told by another officer that the man he had cuffed and turned over was, in fact, Herman Sanchez. He consulted the diagram that had been drawn up, checked to see who was, what man was in position number five, and that said Herman Sanchez. Then he wrote out his report that Herman Sanchez was the man who had first attacked him, thrown the first punch. I understand that the evidence could have gone, the conclusion as to whether or not your client participated in the assault could have gone the other way. But this is not a case about against the weight of the evidence. It's about whether or not there was a violation of Federal due process in denying access to Officer Teach's personnel file. Right, Your Honor. It's of course correct. The reason I'm giving the evidentiary background is because I simply wanted to point out that this was not a case where there was overwhelming evidence of theft. I understand that. And so I understand perfectly why. It clearly could have gone either way. I understand perfectly why you want to look at that file, because there might just be something in there, who knows what, that would help you. Exactly. Exactly. I don't see the Federal due process violation in not getting it. Obviously, if there's Brady material in there, they have an obligation to hand it over to you. Now, I'm not so naive to think as there's never a Brady violation, but without any indication that there is a Brady violation, and indeed your argument isn't really so much Brady as, well, there might have been some evidence that would be helpful in undermining his sort of ability to perceive or identify carefully. Right. I just don't see any case law that gets you where you need to get as a matter of Federal law. Well, of course, Pennsylvania v. Richey is what we rely on most heavily. And I think Pennsylvania v. Richey is quite favorable, actually, for this reason. What we are asking for here is not in, you know, blanket, at this point, discovery of the personnel files, but just what happened was the trial court in response to the Pitchess motion denied the motion without performing the in-camera review. You don't want the first look. You want the judge to look. Yes. That really, at this point, is what we're asking. Why? Asking for that in-camera review to decide whether there's something, some Brady material in there. And it's so crucial as far as prejudice situation because there was this one witness, two witnesses, as I said, also correctional officers that testified that Mr. Sanchez was not one of the people who assaulted Officer Teach. So for that reason, impeachment evidence could clearly have been helpful to help shift the balance, the weight of that evidence. Now, as to there being a Federal law violation, I believe that failing to do the in-camera review and the analysis that the trial judge did in reaching, in deciding to deny the motion even without in-camera review was both contrary to and an unreasonable application of the law that was set out in Pennsylvania v. Ritchie. The Ritchie court, they had a Pennsylvania case, and the Commonwealth had actually decided much more strongly in favor of the criminal defendant in that case. The Commonwealth had said that the defendant and his attorney had a right to see that personnel file, or it wasn't a personnel file in Ritchie, I'm sorry. It was files of a State agency. But the ‑‑ and the Ritchie court stepped back a little bit. Using the in-camera, they described a process to be used, and they used the in-camera, inserted the in-camera review step as a way of balancing the rights between the due process right of the ‑‑ But didn't Ritchie say that you have to have some basis for your ‑‑ Some basis, Your Honor. For basis is what? Well, in ‑‑ Other than the fact that the evidence was close. Yeah. Well, that's the reason which I believe goes to both materiality and prejudice, is the closeness of the evidence. But what's the basis for thinking that there's something in there? Do you have a prior information about a prior complaint? No. There's nothing? No. There was no solid information that this officer had ever, you know, filed a false report, you know, lied to his superiors. We had no solid information of that. But as far as I know, the law doesn't require that. What the law requires is that the defendant set forth some plausible scenario for how the possible evidence of dishonesty that may exist in the personnel file could then help his case. And in this case, any evidence of dishonesty in the file that might exist in the file that could be used for impeachment at trial would clearly help the balance of that evidence. Sure. Of course. Yeah. Well, I think we have your argument well in hand. You've come to the end of your time. Let's hear from the other side, but we'll give you a minute to respond. Thank you, Your Honor. Yeah. Okay. Thank you. Thank you. Thank you. Thank you. I'll be happy to answer any questions. Were you trial counsel? No. Well, you're not in a very good position to answer this, but I have to say I'm struck in this case by the fact that it would have seemed a fairly harmless thing for the Superior Court judge to have done, to have a look. I don't think it would have been an abuse of discretion under state law for him to do so. It might even have been a violation of state law for him not to do so. Are you familiar with the practices of the Superior Court judges on these pitches motions? Well, somewhat, but the California Court of Appeal has said it did not violate state law, Your Honor. That's truly dispositive, I'm afraid. I mean, because I find this case a little troublesome. The evidence against this man is very thin. I will. And I'm quite sympathetic with him and his attorneys in trying to figure out if there's any way to shake the eyewitness identification of Officer Teach, who's the only one who identifies him. There are lots of other people there who had opportunity to see who was involved in the assault, and nobody identifies him as involved in the assault except for Officer Teach. Well, if you find that evidence thin based on the fact that no one else is identifying him, that would seem to be a great argument to make to a jury. The idea that, well, I'd like, I'd hope there's something else, because that's really all this is. It's just, I hope there's something else. Thank you, Your Honor. Okay. Thank you. Any response? Yes, Your Honor. I didn't get a chance earlier to address the 2254 factors. I'd just like to state that for you quickly. I believe that what happened at the hearing on the Pitch's motion is that the trial judge actually weighed the evidence he had heard at the preliminary examination and said that he had found the officers believable. He believed that they were, had been under stress that day with the circumstances. Well, of course, anyone would be. But he thought that they had tried to tell the truth. And he actually did, based on that, he actually did a weighing of the evidence, deciding that he believed the officers, and then that was a basis for his denying the Pitch's motion even without doing an in-camera review. And the case law shows that this is an improper procedure, that it's contrary to. Even if I thought that California law was violated, and even if I thought that the California Court of Appeal got California law wrong, there's nothing that we're in a position to do about that, because the only thing you've got here is Federal due process. Is, I'm sorry. That is a Federal due process argument, yes. Yes. Okay. Well, we understand the argument very well. Thank you very much. Well presented. Thank you. Thank you, Your Honor. Sanchez v. Lewis, now submitted for decision.
judges: Curiel, SCHROEDER, FLETCHER